IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

ENRICO F. LUCHETTI,

Petitioner,

v.

MERIT SYSTEMS PROTECTION BOARD,

Respondent.

NO. 17-71081

## RESPONDENT'S UNOPPOSED MOTION TO RECAPTION CASE TO DESIGNATE THE DEPARTMENT OF THE INTERIOR AS RESPONDENT

Pursuant to Federal Rules of Appellate Procedure 27 and 43(b), the

respondent, the Merit Systems Protection Board ("MSPB"), hereby moves

this Court to reform the caption in this case to substitute the Department of

the Interior ("agency") as the respondent. Counsel for the agency represents

that the agency does not object to this motion. Counsel for the MSPB also

contacted counsel for the petitioner, who states that he has no objections to

the motion.

The petitioner Enrico Luchetti seeks review of a final MSPB decision

that dismissed his whistleblower case based on a finding that the agency

would have taken the personnel actions at issue against the petitioner even

in the absence of his protected whistleblowing disclosures. Under the

MSPB's governing statute, appeals of MSPB cases decided in whole or in part on the merits must name the employing agency as the respondent, while appeals of MSPB cases decided exclusively on jurisdictional or procedural grounds must name the MSPB as respondent. 5 U.S.C. § 7703(a)(2). Because the MSPB decided the petitioner's case on the merits, this appeal should be recaptioned to designate the petitioner's employing agency, the Department of the Interior, as the respondent.

BACKGROUND

A.  The Role of the Merit Systems Protection Board and the Whistleblower Protection Enhancement Act

The MSPB is an independent, quasi-judicial agency in the executive branch that serves as the guardian of federal merit systems. The MSPB was established by the Civil Service Reform Act of 1978 ("CSRA"), Pub. L. No. 95-454, *codified at* 5 U.S.C. § 1101, *et seq.* A federal employee who is removed from service or suffers other adverse or disciplinary action, including reprisal for disclosures protected by the Whistleblower Protection Act ("WPA") or the Whistleblower Protection Enhancement Act ("WPEA"), may appeal to the MSPB. An administrative judge in one of the MSPB's regional offices adjudicates the appeal and issues an initial decision. The employee may then file a petition for review of the administrative judge's initial decision with the full Board ("Board") located at MSPB headquarters

in Washington, D.C. Following the Board's final decision, or if there is no petition for Board review and the initial decision becomes the MSPB's final decision, the employee may appeal to a federal appellate or district court, depending on the nature of his claims. *See* 5 U.S.C. § 7703.

Until December 27, 2012, the U.S. Court of Appeals for the Federal Circuit was the MSPB's sole reviewing court for most cases involving allegations of whistleblower reprisal. The WPEA, effective that date, contained a provision that permitted employees to appeal certain whistleblower reprisal claims to the Federal Circuit or "to any other circuit court of appeals of competent jurisdiction." 5 U.S.C. § 7703(b)(1)(B). The petitioner appealed to this Court under this provision.

Under the statutory scheme, an employee may raise whistleblower reprisal claims before the MSPB in one of two ways: (1) as a reprisal claim standing alone, known as an "individual right of action" ("IRA") appeal (see 5 U.S.C. § 1221); or (2) as an affirmative defense to a personnel action taken against the employee over which the MSPB independently has jurisdiction, such as a removal or a suspension for more than 14 days. *See Russell v. Dep't of Justice*, 76 M.S.P.R. 317, 322 (1997). An employee must exhaust his IRA claims with the Office of Special Counsel before the MSPB can properly have jurisdiction over an IRA appeal, but need not do so

for a whistleblower claim raised as an affirmative defense to an action that otherwise is within the MSPB's jurisdiction. 5 U.S.C. §§ 1214(a)(3), 1221(b); *Ellison v. M.S.P.B.*, 7 F.3d 1031, 1035 (Fed. Cir. 1993). As explained below, the petitioner is appealing the MSPB's decision on an IRA claim.

B. <u>Petitioner's Whistleblower Claims and the MSPB Decision</u>

Mr. Luchetti was initially employed as a Maintenance Worker, WG-08, by the agency's Golden Gate National Recreation Area, National Park Service, in August 2014. Respondent's Appendix ("A") 1, 3. The petitioner was terminated from this position during his probationary period on March 27, 2015. A1. On October 29, 2015, the petitioner filed an IRA appeal with the MSPB alleging that he made protected disclosures under 5 U.S.C. § 2302(b)(8) that were a contributing factor in his termination. A1. The petitioner's disclosures concerned unsafe working conditions for workers performing maintenance in dry well sewers without required preparation for the job, such as atmospheric testing, provision of proper equipment, and an available rescue team for emergencies. A 3-4.

The MSPB administrative judge found that Mr. Luchetti had exhausted his available remedies with the Office of Special Counsel. A2. The administrative judge also found that the petitioner made nonfrivolous

allegations of the other elements of MSPB jurisdiction. A1. Thus, the administrative judge found that the MSPB had jurisdiction and, accordingly, held a hearing on the merits of the petitioner's claim. A1.

In his initial decision,[1] the administrative judge found that the petitioner had established that his disclosures were protected under section 2302(b)(8) as disclosures of what he reasonably believed were violations of regulations and substantial and specific dangers to public health and safety. A5. The administrative judge also found that the supervisor who recommended the petitioner's termination to the official who took the action was aware that the petitioner was part of the group of employees who were raising concerns about confined space entry safety. A6. On that basis and the timing of the disclosures in relation to the termination, he concluded that the petitioner had established that his disclosures were a contributing factor to his termination. A5-6.

The administrative judge noted that these findings would entitle the petitioner to corrective action unless the agency had presented clear and convincing evidence that it would have taken the same personnel action in the absence of the disclosures. A6. The agency based its termination action

---

[1] The initial decision, which became the final decision of the MSPB, is appended to this motion.

on charges that the petitioner engaged in heated and inappropriate conduct that showed lack of respect for his coworkers and that he accessed the workplace building without authorization during nonworking hours. A6-11. The administrative judge weighed the testimony and concluded that the agency's reasons for the termination were consistent with the purpose of the probationary period and that it had submitted strong evidence supporting the grounds for termination. A11. He also found that the supervisor who recommended the termination had no personal motivation to retaliate. A12. Thus, the administrative judge concluded that the agency had shown by clear and convincing evidence that it would have taken the same probationary termination action against the petitioner in the absence of any of his protected disclosures. A13.

No petition for Board review having been filed, the administrative judge's decision became the final decision of the MSPB on March 22, 2017. A13.

## DISCUSSION

In appeals from MSPB decisions, the question of whether the agency responsible for the underlying personnel action or the MSPB should be the respondent is defined by statute. 5 U.S.C. § 7703, which governs appeals of MSPB decisions, provides:

> The Board shall be named respondent in any proceeding brought pursuant to this subsection, *unless* the employee or applicant for employment seeks review of a final order or decision *on the merits on the underlying personnel action* or on a request for attorney fees, in which case the agency responsible for taking the personnel action shall be the respondent.

5 U.S.C. § 7703(a)(2) (emphasis added). Thus, when the Board decides a case on merits grounds, the agency is the proper respondent in any appeal of the Board's decision; when the Board dismisses the case for lack of jurisdiction, the Board is the proper respondent.

As the Federal Circuit[2] has explained, determination of the proper respondent "has consequences considerably beyond the proper titling of the court papers." *Spruill v. M.S.P.B.*, 978 F.2d 679, 681 (Fed. Cir. 1992). "It determines which agency and whose lawyers – and therefore whose policies and practices – are represented in the appeal." *Id.* at 683. This division reflects Congress' intent to "give[] authority to shape the litigation to the agency most affected by the outcome." *Id.* at 685.

In an appeal of an MSPB decision on the merits of the underlying personnel action, which involves no jurisdictional or procedural issues, the Federal Circuit has held that the appropriate respondent is the agency

---

[2] Because of its exclusive jurisdiction over these appeals until the enactment of the WPEA, the Federal Circuit is the only federal appellate court to have addressed these issues.

responsible for the underlying personnel action. *See Amin v. M.S.P.B.*, 951 F.2d 1247, 1252 (Fed. Cir. 1991). Even in cases that involve both the merits of an agency's action and questions of the MSPB's procedures or jurisdiction, the Federal Circuit has held that the agency is the proper respondent. In *Spruill*, the Federal Circuit held:

> If the issue on appeal is solely one of the procedure or jurisdiction of the MSPB, then the proper respondent is the MSPB. If the issue is solely the merits of the underlying agency action, the agency is the proper respondent. If the case raises a mixture of these issues . . . the employing agency is the proper respondent.

978 F.2d at 686. *See also Amin*, 951 F.2d at 1252 (finding that the agency should be the respondent where the MSPB issued a decision on the merits and the petitioner raised a potential procedural issue in his appeal).

Here, the MSPB administrative judge conducted a hearing on the merits, issued factual findings, and reached a decision on the merits of the case. The petitioner's appeal to this Court does not raise any jurisdictional issues. Therefore, pursuant to 5 U.S.C. § 7703(a)(2), the appropriate respondent in the case is the agency. Accordingly, the respondent MSPB respectfully requests that the Court reform the caption to identify the agency as the respondent.

## CONCLUSION

For the reasons stated above, the MSPB respectfully requests that the Court grant its motion and recaption the case to designate the Department of the Interior as the respondent.

Respectfully submitted,

BRYAN G. POLISUK
General Counsel

KATHERINE M. SMITH
Deputy General Counsel


/s/ Calvin M. Morrow
CALVIN M. MORROW
Attorney
Office of the General Counsel
Merit Systems Protection Board
1615 M Street, NW
Washington, DC 20419-0002
(202) 254-4492

April 25, 2017

## CERTIFICATE OF SERVICE

I hereby certify that on this date, service of the UNOPPOSED MOTION TO RECAPTION CASE TO DESIGNATE THE DEPARTMENT OF THE INTERIOR AS RESPONDENT was made upon the following individual by electronic mail:

David Clisham, Esq.

DATE: April 25, 2017        /s/ Charlene E. Abbey
                                              Charlene E. Abbey
                                              Paralegal

RESPONDENT'S APPENDIX
(A/K/A "A")

# UNITED STATES OF AMERICA
# MERIT SYSTEMS PROTECTION BOARD
# WESTERN REGIONAL OFFICE

ENRICO F. LUCCHETTI,
                 Appellant,

v.

DEPARTMENT OF THE INTERIOR,
                 Agency.

DOCKET NUMBER
SF-1221-16-0091-W-3

DATE: February 15, 2017

David P. Clisham, Esquire, San Francisco, California, for the appellant.

Karen D. Glasgow, Esquire, San Francisco, California, for the agency.

**BEFORE**
Anthony L. Ellison
Administrative Judge

## INITIAL DECISION

### INTRODUCTION

On October 29, 2015, the appellant timely filed an Individual Right of Action (IRA) appeal alleging that he made protected disclosures under 5 U.S.C. § 2302(8) which were contributing factors in his termination, during his probationary period, from the position of Maintenance Worker, WG-08, for the Golden Gate National Recreation Area (GOGA), National Park Service, effective March 27, 2015. Initial Appeal File (W-1), Tab 1. The appellant made nonfrivolous allegations of Board jurisdiction, and a merits hearing was held. *Shope v Department of the Navy*, 106 M.S.P.R. 590, ¶ 5 (2007) (in an IRA appeal, the Board has jurisdiction over an IRA appeal when the appellant makes a nonfrivolous allegation that the elements of his claim are satisfied on the written

record); 5 U.S.C. §§ 1214(a)(3), 1221(a), (e). For the reasons discussed below, the appellant's request for corrective action is DENIED.

## ANALYSIS AND FINDINGS

<u>Burden of Proof</u>

In reviewing the merits of an IRA appeal, the Board must examine whether the appellant proved by preponderant evidence[1] that he engaged in whistleblowing activity by making a protected disclosure under 5 U.S.C. § 2302 (b)(8), and that such whistleblowing activity was a contributing factor in an agency personnel action; if so, the Board must order corrective action unless the agency established by clear and convincing evidence[2] that it would have taken the same personnel action in the absence of the disclosure. *Schnell v Department of the Army*, 114 M.S.P.R. 83, ¶ 18 (2010) (citing *Fisher v. Environmental Protection Agency*, 108 M.S.P.R. 296, ¶ 15 (2008)).[3]

A protected disclosure is a disclosure that an appellant reasonably believes evidences a violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. 5 U.S.C. § 2302 (b)(8)(A); *Chambers v Department of the Interior,* 515 F.3d 1362, 1367 (Fed. Cir. 2008), *remanded to* 110 M.S.P.R. 321 (2009), *aff'd in part, rev'd in part on other grounds, remanded by* 602 F.3d 1370 (Fed. Cir. 2010). A reasonable belief exists if a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the

---

[1] A preponderance of the evidence is that degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.4(q).

[2] Clear and convincing evidence is that measure or degree of proof that produces in the mind of the trier of fact a firm belief as to the allegations sought to be established. 5 C.F.R § 1209.4(d)

[3] It is undisputed that the appellant exhausted his available remedies with the Office of Special Counsel.

appellant could reasonably conclude that the actions of the government evidence one of the categories in section 2302(b)(8)(A). *Lachance v. White*, 174 F.3d 1378, 1381 (Fed. Cir. 1999), *cert. denied*, 528 U.S. 1153 (2000). To establish that the appellant had a reasonable belief that a disclosure met the criteria of 5 U.S.C. § 2302(b)(8), he need not prove that the condition disclosed actually established a regulatory violation or any of the other situations detailed under 5 U.S.C. § 2302(b)(8)(A)(ii); rather, the appellant must show that the matter disclosed was one which a reasonable person in his position would believe evidenced any of the situations specified in 5 U.S.C. § 2302(b)(8). *Schnell*, 114 M.S.P.R. ¶ 19 (*citing Garst v Department of the Army*, 60 M.S.P.R. 514, 518 (1994)).

The appellant's alleged protected disclosures

The appellant was hired in August of 2014. Second Refiled Appeal (W-3), Tab 6, p. 79 of 140. Prior to his arrival, Ellis Miller, a union business manager and later the appellant's co-worker, had received information that another co-worker, Patrick Cusick, had been entering dry well sewers, to perform maintenance, without doing required preparation, such as atmospheric testing, using proper equipment, and having a rescue team available. He had learned of this from shop steward Tony Maldonado, who had done "a lot of research on OSHA [Occupational Safety & Health Administration] regulations" about the issue. Testimony of Mr. Miller. Buildings and Utility Supervisor John Geitner testified that his crew had not had much training on this issue in the past, but that the agency had been following its own standard operation procedures (SOPs) for entering such confined spaces, and that each of its safety officers had a "different approach" to the issue, noting that it was an "ongoing decision making process." Testimony of Mr. Geitner. His crew had received some training on the issue soon before the appellant arrived.

4

After the appellant began working, he joined Mr. Miller and Mr. Maldonado in bringing to management's attention the fact that Mr. Cusick's entry into the dry wells without such preparation was a violation of the confined space regulations set forth in 29 C.F.R. § 1910.146. The appellant had knowledge of those regulations from his experience in the U.S. Coast Guard, and they all talked to Mr. Geitner, his supervisor Facility Manager Gerald Scheumann, and others about the dangers of entering confined spaces without adhering to published safety regulations. Testimonies of Mr. Miller, Mr. Maldonado, Mr. Geitner and the appellant. Management arranged further training for the crew on this matter, and began to use more updated safety equipment when entering confined spaces. Testimonies of Mr. Scheumann and Work Leader Paola Bolorino. Sometime in March of 2015, Mr. Miller filed a "Notice of Alleged Safety or Health Hazards" with OSHA. Testimony of Mr. Miller; First Refiled Appeal (W-2), Tab 6, p. 43 of 140. By letter of April 28, 2015, OSHA responded to Mr. Miller's complaint, advising him that its investigation confirmed his allegations, and noting the agency's "good faith" efforts to rectify the situation. *Id*, p. 45 of 140. Mr. Scheumann, who recommended the appellant's termination – which was effective March 27, 2015 – testified that he had no knowledge that the appellant was involved with the OSHA complaint in any fashion, and there is no evidence that anyone told him of any such involvement. Indeed, the appellant himself testified that, while Mr. Miller told him that he was going to file an OSHA complaint, he was not present when Mr. Miller wrote it, and that neither he nor anyone else told anyone in management that he had any role in that complaint. Testimony of the appellant.

In conclusion, while it is clear that the concerns of Mr. Miller and Mr. Maldonado regarding the confined space issues preceded the appellant's hiring, it is also clear that the appellant raised those same issues after he arrived. Thus, in

light of the extremely liberal analysis required to be applied in such cases,[4] I find that they were protected under the statute as disclosures of what he reasonably believed to be violations of regulation and "substantial and specific dangers to public health and safety" in that regard.

<u>The "knowledge/timing test" requires a finding that the appellant's disclosures were contributing factors to the personnel actions at issue here.</u>

The term "contributing factor" means any disclosure that affects an agency's decision to threaten, propose, take, or not take a personnel action with respect to the individual making the disclosure. *Covarrubias v. Social Security Administration,* 113 M.S.P.R. 583 (2010) at ¶ 15 (citing 5 C.F.R. § 1209.4(c)), *overruled on other grounds, Colbert v. Department of Veterans Affairs*, 121 M.S.P.R. 677, 684-5 (2014). In a 1994 amendment to the WPA, Congress established a knowledge/timing test that allows an employee to demonstrate that the disclosure was a contributing factor in the personnel action through circumstantial evidence, such as evidence that the official taking the personnel action "knew of the disclosure," and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor. *Id.* (citing 5 U.S.C. § 1221(e)(1) and *Rubendall v. Department of Health & Human Services,* 101 M.S.P.R. 599, ¶ 12 (2006)). Here, while there is no evidence that anyone in management believed the appellant had

---

[4] The Board has stated that the WPA "should be broadly construed in favor of those whom it was intended to protect " *Porter v Department of the Treasury*, 80 M.S.P.R. 606, 609 (1999). Further, protected whistleblowing encompasses disclosures of not only actual but also potential wrongdoing or lapses in following rules. *See, e.g , Reid v. Merit Systems Protection Board*, 508 F.3d 674, 677 (Fed. Cir. 2007). Also, there is "no *de minimis* exception" for the violation of law, rule or regulation aspect of protected disclosures. *Grubb v Department of the Interior*, 96 M.S.P.R. 377, 389-90 (2004); *Berkley v Department of the Army*, 71 M.S.P.R. 341, 352 (1996)(an "agency's violation may have been minor and promptly corrected, but there is no *de minimis* exception....").

a role in the OSHA complaint, it is apparent that Mr. Scheumann was at least aware that the appellant was part of the group who had raised concerns regarding the on-going issue of confined space entry safety. Testimonies of Mr. Miller and Mr. Scheumann. Further, it is undisputed that Mr. Scheumann recommended the appellant's termination during his probationary period, and that his recommendation was acted upon by Acting Superintendent Aaron Roth in late March of 2015.5 W-2, Tab 6, pp. 79-81 of 140. Thus, I am obliged to conclude that the appellant's disclosures were a contributing factor to that action.

<u>The agency has shown by clear and convincing evidence that it would have taken the same actions in the absence of the appellant's disclosures.</u>

Having found that the appellant's disclosures were a contributing factor in the personnel actions at issue, the Board must order corrective action unless the agency establishes by clear and convincing evidence that it would have taken the same personnel actions in the absence of the disclosure(s). *See Smart v. Department of the Army*, 98 M.S.P.R. 566, ¶ 12 (2005).

In determining whether an agency has shown by clear and convincing evidence that it would have taken the same personnel action in the absence of whistleblowing, the Board will consider the following factors: (1) The strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *E.g., Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir.

---

[5]   The Board has held that an "appellant may establish constructive knowledge by demonstrating that an official with actual knowledge influenced the official accused of taking the retaliatory action." *Dorney v. Department of the Army*, 117 M.S.P.R. 480, 485 (2012), and cases cited therein.

1999). The Federal Circuit has defined "clear and convincing evidence" as the degree of proof "which produces in the mind of the trier of fact an abiding conviction that the truth of a factual contention is 'highly probable.'" *Road & Highway Builders v. U.S.*, 702 F.3d 1365, 1368 (Fed. Cir. 2012). In assessing the three factors set out in *Carr*, the Board need not find that the agency proved every one of those factors by clear and convincing evidence; rather, the Board will weigh the factors together to determine whether the evidence is clear and convincing as a whole, and a particularly strong showing by the agency on any one factor may be sufficient. *Phillips v. Department of Transportation*, 113 M.S.P.R. 73, 77 (2010); *Bonggat v. Department of the Navy*, 56 M.S.P.R. 402, 408 (1993).

*The strength of the agency's evidence in support of its actions.*

The agency removed the appellant on the basis of two specific incidents. The first was described as follows:

> On March 4, 2015, at approximately 06:55 hours, you engaged in a verbal altercation with Patrick Cusick regarding the mini refrigeration [*sic*] and milk. You shouted loudly at Mr. Cusick, "where did you put my milk, you son of a bitch? Shut up. You don't touch my stuff, you understand?" Mr. Cusick responded, letting you know that the mini refrigeration [*sic*] was his personal refrigerator that needed to be taken home; and that your milk had been placed in the large communal refrigerator. Your shouts could be heard across the room by several employees.

W-2, Tab 6, pp. 79-80 of 140. *See also id.*, p. 50 of 140. Ms. Bolorino witnessed this event and talked to Mr. Scheumann later that morning and sent him an e-mail about it the next day. W-2, Tab 7. p. 5 of 103. In that e-mail, she explained:

> On March 4, 2015 Wednesday morning an argument too[k] place between Patrick Cusick and Enrico Luchetti. I was sitting down in my work station getting ready for the morning meeting in a different location from where the argument took place. But from where I was sitting I could hear Enrico yelling with profanity at Patrick. (Enrico

started the argument). The discussion went back and forth between them....

[Later that morning, she asked Mr. Scheumann] to attend a meeting I was planning to have with Patrick and Enrico to address the issue between them.

We used the supervisor's office for our meeting. I started the conversation asking Enrico the reason he was yelling at Patrick. He said he was very upset, because he found that his milk that was inside the mini-fridge close to his work station was moved to a fridge in the break room. Patrick explained to him that the mini-fridge was his personal one and he needed it back at home.

Then I told Enrico that yelling with profanity at co-workers was not the way to go about addressing problems in the shop. This creates a very hostile work environment.

*Id.* Ms. Bolorino testified similarly, adding that the appellant used profanity during the exchange, specifically calling Mr. Cusick a "son of a bitch." Testimony of Ms. Bolorino. For his part, the appellant described the exchange as a "discussion over milk," and a "stern argument," but that he did not yell at Mr. Cusick; rather, "I recall saying to him you could at least let me know where you put my stuff if you moved your personal fridge..." He denied using the words "son of a bitch," agreeing with his counsel's suggestion that Ms. Bolorino "made that up out of whole cloth," and explaining "but this is me. I know I said the F-word ...but I did not yell. I talk stern." He did not deny starting the argument, however. Testimony of the appellant.

In consideration of all of the above, I find that Ms. Bolorino's version of the events is more plausible than the appellant's, which, in any case, did not dispute the essential nature of, and his responsibility for, the incident.

The second incident is described as follows:

On March 13, 2015. John Craig, Park Ranger (Protection), met with you to discuss your unauthorized access to building 513 during non-working hours over the past several months. During the meeting with Mr. Craig. you admitted to accessing building 513 during non-working hours and your scheduled days off to sleep in the building. You reasoned your unauthorized access by noting that you were

having domestic issues at home and preferred to access and sleep in building 513 to avoid domestic issues at home.

W-2, Tab 6, p. 80 of 140. Mr. Scheumann testified that in February of 2015 there were an abnormal number of reports of building alarms being triggered after hours and there was "chatter" among the crew suggesting that the appellant was using one of GOGA's buildings for his personal business. As a result, Mr. Scheumann contacted the Park Police unit stationed at GOGA because they maintain the alarm logs for GOGA's buildings. Mr. Scheumann's review of those logs revealed that the appellant had entered park buildings after hours on many occasions without permission or overtime work assignments to complete, including on Christmas day, staying for periods of time from 20 minutes to a few hours to overnight.[6] Testimony of Mr. Scheumann. W-2, Tab 7, pp. 4-27 of 103. He explained that he had previously talked to the appellant about not going into agency buildings after hours and told him to be out of them by 6:00 p.m.. *Id.*

The appellant testified that he slept overnight in the maintenance building only once, but that he washed up, did laundry and "kill[ed] time" there sometimes, as well. Testimony of the appellant. As he had also told Ranger Craig, the appellant testified that he did so because, "at that time, my relationship with my ex-girlfriend wasn't too good" so "instead of going to jail, maybe that was a place, you know, just to hang out for a little bit until everything cools off..." *Id.*; W-2, Tab 6, pp. 48-9 of 140. As with the first allegation, therefore, it is clear that the appellant does not dispute the essential facts of this reason for his termination.

Further, in its letter terminating him during his probationary period, the agency noted that

---

[6] The pertinent log entries revealed such activity using both the appellant's access code and that of Mr. Geitner, who had given his code to the appellant. The entries under Mr. Geitner's code were long after Mr. Geitner had left on a long-term assignment elsewhere. Testimony of Mr. Scheumann.

> The above is just a few examples of deficiencies identified by your supervisor. Your poor output required attention and resources of other staff members. You have received expressed warnings concerning your deficiencies and have been given ample opportunities to improve; however, you continue to be deficient.

W-2, Tab 6, p. 80 of 140. Mr. Geitner, who hired the appellant, testified that, while the appellant was a good worker, several of his coworkers had contacted him complaining about the appellant's conduct and attitude, noting that his "foul and derogatory language," "harsh" attitude and "lack of respect" for others who had been there a long time were "basic concerns." Mr. Geitner opined that "until you establish those boundaries where both parties are comfortable," one should not use harsh and profane language with coworkers, as the appellant did. He explained that he spoke to the appellant about these issues several times, and that the appellant would assure him that he would correct his behavior and attitude, but that he never did. He also explained that when a plumber position became available, he considered hiring the appellant for it, but was hesitant to do so because he was about to depart and did not want to "walk out the door" and "hand somebody these issues" with the appellant's conduct. Testimony of Mr. Geitner.

Pascual, and who complained to her about it. She explained that she asked the appellant to "watch it," but that he never changed. Testimony of Ms. Bolorino testified that she complained to Mr. Geitner about the appellant's behavior, and the fact that he was unprofessional, "used the F word a lot," and told dirty jokes in front of coworkers who were bothered by them, including Mr. Cusick and a Mr. Ms. Bolorino. Mr. Scheumann explained that he had witnessed the appellant's inappropriate jokes and behavior himself and had spoken to Mr. Geitner about it. He stated that the appellant "does not filter what comes out of his mouth," and that he had asked if some woman "was a flip or a spick" or was "a little spinner you'd like to fuck," noting that Mr. Pascual, who is Filipino, "flinched" and was seriously offended by it. Testimony of Mr. Scheumann. He

noted that it gave him "serious caution" about hiring the appellant to the plumber position, noting that "if this was his best behavior" as a probationer, it would only get worse if he was made permanent. *Id.* The appellant's assertion that management never brought to his attention their concerns about his language and conduct is directly contradicted by these testimonies and by the written record. *See, e.g.*, W-2, Tab 7, p. 50 of 103.

While neither the Board nor its reviewing court has articulated a standard applying the "clear and convincing" evidentiary standard with the very low threshold for termination of a probationary employee, compared with the "efficiency of the service" standard applicable to the removal of an employee with ordinary Board adverse action appeal rights, I find that the agency's reasons for terminating the appellant in this case were consistent with the purpose of the probationary period, and clearly constitute strong evidence supporting that termination.

*The existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision*

Although the Board has no formula to assess the strength of the motive of an agency official to take reprisal against a whistleblower, it has considered whether officials accused of reprisal were named in the whistleblower disclosure, whether agency officials properly investigated relevant facts and circumstances underlying the action taken against the appellant, whether the responsible agency officials were linked to the wrongdoing alleged in the disclosures, and whether the disclosures reflected poorly upon them, whether officials were aware of the particulars of the disclosures, and whether the official or officials most heavily involved in the action under appeal had a strong motive to retaliate against the appellant.

Here, no particular agency officials were named in or linked to any of the appellant's disclosures; rather, he merely asserted that certain safety requirements were not being followed generally, and nothing in the disclosures reflected poorly upon any particular official. Further, as noted, there is no evidence that the official who actually authored the termination letter had any knowledge whatsoever of the appellant's disclosures, and Mr. Schuemann, who recommended the appellant's termination, actually assumed that Mr. Maldonado, and not the appellant, was behind the related OSHA complaint, or that he had any other personal motivation to retaliate against the appellant.[7] Finally, it is clear that the agency properly considered the relevant facts and circumstances underlying the appellant's termination. Thus, I find that there is scant evidence of any, much less strong, motivation to retaliate on the part of anyone involved in the appellant's probationary termination.

Finally, the appellant notes in his closing argument that "[t]here is no evidence that the [agency] removed any employees who are not whistleblowers but who are otherwise similarly situated to the Appellant." W-3, Tab 8. In *King v. Department of the Army*, 602 Fed Appx. 812, 815 (Fed. Cir. 2015 NP), the court noted that the appellant in that case, who was also a probationer like the appellant here, "acknowledges that there were no similarly situated probationary employees, and non-probationary employees are not similarly situated" to her. Similarly, there is no evidence of any similarly situated probationary comparators in this case. I do note, however, that no action whatsoever was taken by the agency against Mr. Miller, Mr. Maldonado, or anyone else who complained about its failure to follow pertinent regulations regarding confined spaces.

---

[7] The appellant conceded that he never told management that an OSHA complaint was going to be filed and that he was "not aware" that anyone in management knew he was assisting Mr. Miller in preparing that complaint. Testimony of the appellant.

In any event, as noted above, the Board need not find that the agency proved every *Carr* factor by clear and convincing evidence; rather, the Board will weigh the factors together to determine whether the evidence is clear and convincing as a whole, and a particularly strong showing by the agency on any one factor may be sufficient. *Phillips, supra.*

In conclusion, then, I find that the agency has shown by clear and convincing evidence that it would have taken the same probationary termination action against the appellant in the absence of any of his protected activities or disclosures.

## DECISION

The appellant's request for corrective action is DENIED.

FOR THE BOARD:

Anthony L. Ellison
Administrative Judge

## NOTICE TO APPELLANT

This initial decision will become final on **March 22, 2017**, unless a petition for review is filed by that date. This is an important date because it is usually the last day on which you can file a petition for review with the Board. However, if you prove that you received this initial decision more than 5 days after the date of issuance, you may file a petition for review within 30 days after the date you actually receive the initial decision. If you are represented, the 30-day period begins to run upon either your receipt of the initial decision or its receipt by your representative, whichever comes first. You must establish the date on which you or your representative received it. The date on which the initial decision becomes final also controls when you can file a petition for review with the Court of Appeals. The paragraphs that follow tell you how and when to file with the Board or the federal court. These instructions are important

because if you wish to file a petition, you must file it within the proper time period.

## BOARD REVIEW

You may request Board review of this initial decision by filing a petition for review.

If the other party has already filed a timely petition for review, you may file a cross petition for review. Your petition or cross petition for review must state your objections to the initial decision, supported by references to applicable laws, regulations, and the record. You must file it with:

The Clerk of the Board
Merit Systems Protection Board
1615 M Street, NW.
Washington, DC 20419

A petition or cross petition for review may be filed by mail, facsimile (fax), personal or commercial delivery, or electronic filing. A petition submitted by electronic filing must comply with the requirements of 5 C.F.R. § 1201.14, and may only be accomplished at the Board's e-Appeal website (https://e-appeal.mspb.gov).

### Criteria for Granting a Petition or Cross Petition for Review

Pursuant to 5 C.F.R. § 1201.115, the Board normally will consider only issues raised in a timely filed petition or cross petition for review. Situations in which the Board may grant a petition or cross petition for review include, but are not limited to, a showing that:

(a) The initial decision contains erroneous findings of material fact. (1) Any alleged factual error must be material, meaning of sufficient weight to warrant an outcome different from that of the initial decision. (2) A petitioner who alleges that the judge made erroneous findings of material fact must explain why the challenged factual determination is incorrect and identify specific evidence in the record that demonstrates the error. In reviewing a claim of an

15

erroneous finding of fact, the Board will give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing.

(b) The initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case. The petitioner must explain how the error affected the outcome of the case.

(c) The judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case.

(d) New and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. To constitute new evidence, the information contained in the documents, not just the documents themselves, must have been unavailable despite due diligence when the record closed.

As stated in 5 C.F.R. § 1201.114(h), a petition for review, a cross petition for review, or a response to a petition for review, whether computer generated, typed, or handwritten, is limited to 30 pages or 7500 words, whichever is less. A reply to a response to a petition for review is limited to 15 pages or 3750 words, whichever is less. Computer generated and typed pleadings must use no less than 12 point typeface and 1-inch margins and must be double spaced and only use one side of a page. The length limitation is exclusive of any table of contents, table of authorities, attachments, and certificate of service. A request for leave to file a pleading that exceeds the limitations prescribed in this paragraph must be received by the Clerk of the Board at least 3 days before the filing deadline. Such requests must give the reasons for a waiver as well as the desired length of the pleading and are granted only in exceptional circumstances. The page and word limits set forth above are maximum limits. Parties are not expected or required to submit pleadings of the maximum length. Typically, a well-written petition for review is between 5 and 10 pages long.

If you file a petition or cross petition for review, the Board will obtain the record in your case from the administrative judge and you should not submit anything to the Board that is already part of the record. A petition for review must be filed with the Clerk of the Board no later than the date this initial decision becomes final, or if this initial decision is received by you or your representative more than 5 days after the date of issuance, 30 days after the date you or your representative actually received the initial decision, whichever was first. If you claim that you and your representative both received this decision more than 5 days after its issuance, you have the burden to prove to the Board the earlier date of receipt. You must also show that any delay in receiving the initial decision was not due to the deliberate evasion of receipt. You may meet your burden by filing evidence and argument, sworn or under penalty of perjury (*see* 5 C.F.R. Part 1201, Appendix 4) to support your claim. The date of filing by mail is determined by the postmark date. The date of filing by fax or by electronic filing is the date of submission. The date of filing by personal delivery is the date on which the Board receives the document. The date of filing by commercial delivery is the date the document was delivered to the commercial delivery service. Your petition may be rejected and returned to you if you fail to provide a statement of how you served your petition on the other party. *See* 5 C.F.R. § 1201.4(j). If the petition is filed electronically, the online process itself will serve the petition on other e-filers. *See* 5 C.F.R. § 1201.14(j)(1).

A cross petition for review must be filed within 25 days after the date of service of the petition for review.

### NOTICE TO AGENCY/INTERVENOR

The agency or intervenor may file a petition for review of this initial decision in accordance with the Board's regulations.

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the United States Court of Appeals for the Federal Circuit.

The court must receive your request for review no later than 60 calendar days after the date this initial decision becomes final. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you want to request review of this decision concerning your claims of prohibited personnel practices under 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you may request review of this decision only after it becomes final by filing in the United States Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction. The court of appeals must receive your petition for review within 60 days after the date on which this decision becomes final. *See* 5 U.S.C. § 7703(b)(1)(B) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. You may choose to request review of the Board's decision in the United States Court of Appeals for the Federal Circuit or any other court of appeals of competent jurisdiction, but not both. Once you choose to seek review in one court of appeals, you may be precluded from seeking review in any other court.

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United

States Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information about the United States Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11. Additional information about other courts of appeals can be found at their respective websites, which can be accessed through http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

If you are interested in securing pro bono representation for your court appeal, that is, representation at no cost to you, the Federal Circuit Bar Association may be able to assist you in finding an attorney. To find out more, please click on this link or paste it into the address bar on your browser:

https://fedcirbar.org/Pro-Bono-Scholarships/Government-Employees-Pro-Bono/Overview-FAQ

The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.